```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CYNTHIA GEORGE; CYNTHIA GEORGE as
mother and natural guardian of
Olivia O'Hara, a minor; and CYNTHIA          MEMORANDUM & ORDER
GEORGE, as mother and natural                13-CV-2317(JS)(ARL)
guardian of Violette O'Hara, a
minor,

                          Plaintiffs,

            -against-

CSX TRANSPORTATION, INC; MICHAEL
O'KEEFE and JOHN DOES 1-10,

                          Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:    Scott Lockwood, Esq.
                   1476 Deer Park Avenue, Suite 3
                   North Babylon, NY 11703

For Defendants
CSX & O'Keefe:     William M. Moran, Esq.
                   Daniel Seth Weinberger, Esq.
                   Gibbons P.C.
                   One Pennsylvania Plaza, 37th Floor
                   New York, NY 10119

John Does 1-10:    No appearances.
```

SEYBERT, District Judge:

Currently pending before the Court is defendants CSX Transportation, Inc. ("CSX") and Michael O'Keefe's ("O'Keefe" and together with CSX, "Defendants") motion for judgment on the pleadings. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiffs Cynthia George, on behalf of herself and as natural guardian of Olivia O'Hara and Violette O'Hara (collectively "Plaintiffs") commenced this action against Defendants and John Does 1-10 on April 17, 2013 raising violations of their constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983") as well as violations of their rights as secured by the laws and Constitution of the State of New York and various other state law claims.

Plaintiffs allege that on April 14, 2012 at approximately 5:00 pm, Ms. George was driving westbound on Northern State Parkway with her children Olivia and Violette in the vehicle. (Compl. ¶ 17.) At that time, O'Keefe--a railroad policeman for CSX[1]--was also driving westbound on Northern State Parkway. (Compl. ¶¶ 14, 16.) O'Keefe activated the lights of his marked CSX Police Vehicle and "forced" Ms. George to stop. (Compl. ¶¶ 16, 18.) O'Keefe was dressed in full uniform and, after holding Plaintiffs at the scene for approximately one hour, issued Ms. George two Uniform Traffic tickets charging her with violations of the New York State Vehicle and Traffic Law. (Compl. ¶¶ 16, 20-21.)

---

[1] According to the Complaint, O'Keefe received his appointment as a railroad policeman pursuant to Section 88 of the Railroad Law for the State of New York. (Compl. ¶ 14.)

On December 17, 2012, "the case of People of the State of New York against Cynthia George was tried before Hon. Allen S. Mathers in the Nassau County Parking and Traffic Violations Agency." (Compl. ¶ 22.) The prosecution called only one witness, O'Keefe, who stated that he had previously issued similar summonses throughout New York and that his supervisors had authorized him to do so. (Compl. ¶¶ 23, 25.) Judge Mathers ultimately dismissed both charges pending against Ms. George. (Compl. ¶ 24.)

Plaintiffs allege that the vehicle stop was a Fourth Amendment seizure and that Defendants "knew, or should have known, that the Defendant O'Keefe had no authority power or jurisdiction [sic] to issue the summonses in question." (Compl. ¶ 27.)

## DISCUSSION

The Court will first address the applicable legal standard before turning to Defendants' arguments more specifically.

### I. Legal Standard

The standard for evaluating a motion for judgment on the pleadings, pursuant to Rule 12(c), is the same as the standard for a motion to dismiss under Rule 12(b). See Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005). In deciding Rule 12(b)(6) motions to dismiss, the Court applies a

3

"plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Plaintiffs' Section 1983 Claims

To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). Defendants assert several reasons for the dismissal of Plaintiffs' Section 1983 claims, including that Plaintiffs have failed to allege that

4

O'Keefe was acting "under color of state law" and that Plaintiffs have otherwise failed to sufficiently allege a constitutional violation. The Court begins with a discussion regarding whether O'Keefe was acting under color of state law.

A. Color of State Law

Defendants maintain that "although Officer O'Keefe is granted his authority by the superintendent of the New York State Police, he, like a private security guard, is charged in part with the protection of CSXT railroad property." (Defs.' Br., Docket Entry 10, at 16.) Accordingly, they assert that O'Keefe was acting in a private--not public--capacity. The Court disagrees.

The parties agree that O'Keefe's authority stems from Section 88 of the New York Railroad Law. Defendants assert, however, that whereas subdivision one of that section gives railroad police full police authority, subdivision fourteen limits that authority to "circumstances relating to railroad property." (Defs.' Br. at 6.)

New York Railroad Law Section 88 provides:

> (1) Upon the application of any corporation owning or operating a railroad, express company operating over a railroad, or of any steamboat company, the superintendent of state police may appoint any person as a policeman, with all the powers of a policeman in cities and villages, for the preservation of order and of the public peace, and the arrest of all persons

5

>committing offenses upon the land of or upon property in the custody of or under the control of such corporation, express company or steamboat company. When the committed offense would constitute a violation a summons in lieu of arrest may be issued.
>
>. . .
>
>(14) A person appointed policeman under [N.Y. R.R. Law § 88] . . . shall not be permitted to exercise the duties or functions of a policeman except upon the property or in connection with the property connected with or under the control of the corporation, express company, or steamboat company, for which he has been appointed.

N.Y. R.R. Law § 88(1), (14).

Given that O'Keefe stopped Plaintiffs on Northern State Parkway, which the parties seem to agree was not CSX property, Defendants are correct that O'Keefe at least arguably exceeded the bounds of his geographical authority. This does not end the inquiry, however. Several courts to address the issue have found that an individual appointed under Section 88 of the New York Railroad Law is a state official for purposes of Section 1983. See Streetwatch v. Nat'l Passenger Corp., 875 F. Supp. 1055, 1063 (S.D.N.Y. 1995) ("Because Amtrack police officers are appointed by the Superintendent of State Police under § 88 of the New York Railroad Law, Defendants do not dispute that they are state agents."); Sisak v. Nat'l R.R. Passenger Corp. (Amtrack), No. 91-CV-1030, 1992 WL 42245, at *3 (S.D.N.Y. Feb. 24, 1992) ("[I]f plaintiff can show that

6

defendant Pisano was appointed under section 88 of the New York Railroad Law or a similar provision of any other state, he will have conclusively shown that defendant is a state official subject to liability under section 1983."); Merola v. Nat'l R.R. Passenger Corp., 683 F. Supp. 935, 941 (S.D.N.Y. 1988) (same).

In addition, Plaintiffs allege that O'Keefe was dressed in full uniform and driving a marked CSX police vehicle. (See Compl. ¶ 16.) "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law made possible only because the wrongdoer is clothed with the authority of state law." Emanuele v. Town of Greenville, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001). Thus, "'it is by now axiomatic that under color of law means under pretense of law . . . .'" Morton v. City of Albany, No. 08-CV-1304, 2009 WL 2568595, at *5 (N.D.N.Y. Aug. 19, 2009) (quoting Pitchell v. Callan, 13 F.3d 545, 547-48 (2d Cir. 1995)). Plaintiffs' allegations that O'Keefe activated the lights on his marked police vehicle and approached them in full uniform, thereby "'invok[ing] the real or apparent power of the police department'" are sufficient to overcome Defendants' motion on this basis. Id. (quoting Pitchell, 13 F.3d at 548)).

7

Accordingly, Defendants' motion for judgment on the pleadings based upon a lack of state action under color of state law is DENIED.[2]

B. False Arrest and Malicious Prosecution

Defendants additionally argue that, even if Plaintiffs have sufficiently alleged that O'Keefe was a state actor acting under color of state law, they have not otherwise sufficiently alleged a constitutional violation. Specifically, they assert that "Plaintiffs' false arrest and malicious prosecution claims must be dismissed because Plaintiffs have not alleged any facts that plausibly support the legal conclusion that Officer O'Keefe lacked probable cause to stop Ms. George's vehicle and issue her traffic summonses." (Defs.' Br. at 11.) The Court agrees.

To state a claim for malicious prosecution under Section 1983, a plaintiff must allege: (1) the commencement of a criminal proceeding, (2) lack of probable cause, (3) the proceedings were instituted with malice, and (4) the proceeding terminated in the plaintiff's favor. See Boyd v. New York, 336

---

[2] Similarly, to the extent that Defendants seek judgment on the pleadings against CSX on the same basis, the motion is DENIED. See Sisak, 1992 WL 42245, at *4 ("By relying on and using the power of the superintendent of state police to appoint police officers, Amtrak benefits from the law enforcement authority of the state."); Merola, 683 F. Supp. at 941 ("Under § 88, the law enforcement authority of the state is granted to railroad police only through the efforts and for the benefit of their employer, whose decision to employ them involves a utilization for its benefit of state law enforcement authority sufficient to satisfy the 'state action' requirement of § 1983.").

8

F.3d 72, 75 (2d Cir. 2003); Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994). Similarly, in a claim of false arrest a plaintiff must demonstrate that her arrest was unlawful. See Zellner v. Summerlin, 494 F.3d 344, 360 (2d Cir. 2007) (analyzing the lower court's jury instruction). Accordingly, it is well-established that "'[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause.'" Williams v. Town of Greenburgh, 535 F.3d 71, 78-79 (2d Cir. 2008) (quoting Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)). Additionally, the requisite elements for a malicious prosecution claim under Section 1983 are the same as those to prove such a claim brought under New York law. See Cook, 41 F.3d at 79.

Plaintiffs allege "[t]hat Defendant O'Keefe[,] in seizing and detaining Plaintiffs[,] acted without probable cause, nor with a reasonable belief that probable cause existed and abused his power granted under the Railroad Law." (Compl. ¶ 33.) As Defendants correctly assert, however, the Complaint's allegations regarding lack of probable cause relate solely to Plaintiffs' claim that "O'Keefe had no probable cause nor reasonable belief or basis to believe he was legally permitted to seize and detain Plaintiffs." (Compl. ¶ 29.) In other words, Plaintiffs' allege that O'Keefe lacked probable cause

9

because he did not have the authority to stop Plaintiffs and issue summonses on Northern State Parkway, off of CSX property.

"In the context of vehicle stops, 'the Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.'" Auricchio v. Giocondo, No. 12-CV-0751, 2013 WL 718340, at *4 (N.D.N.Y. Feb. 27, 2013) (quoting United States v. Harrison, 606 F.3d 42, 45 (2d Cir. 2010)). Thus, while O'Keefe's vehicle stop of Plaintiffs outside of his geographical authority may have violated state law, the inquiry relevant to a Fourth Amendment analysis is whether O'Keefe had probable cause to believe that Ms. George was committing a traffic violation or was otherwise engaged in criminal activity. See Virginia v. Moore, 553 U.S. 164, 171 (2008) ("Whether state law authorized the search [is] irrelevant."). Plaintiffs raise no such allegations. Some courts have noted that "[a] constitutionally reasonable stop or search may . . . become unreasonable if it is conducted in an extraordinary manner," and that lack of geographical authority could theoretically factor into this analysis. Auricchio, 2013 WL 718340, at *7 (internal quotation marks and citation omitted); see also Pasiewicz v. Lake Cnty. Forest Preserve Dist., 270 F.3d 520, 526 (7th Cir. 2001) ("A violation of a

10

state statute is not a per se violation of the federal Constitution."); United States v. Ryan, 729 F. Supp. 2d 479, 490 (D. Mass. 2010) ("The underlying command of the Fourth Amendment is reasonableness, and the fact that an arrest may have violated a territorial-limitation statute . . . is merely a factor to be considered when deciding whether this constitutional mandate has been followed." (internal quotation marks and citation omitted) (alteration in original)). However, one thing is clear--lack of geographical authority alone, and particularly without any assertions that the defendant lacked probable cause to believe that the plaintiff was committing a traffic violation or committing a crime--are insufficient. See Barcomb v. Sabo, No. 07-CV-0877, 2011 WL 1770795, at *9 (N.D.N.Y. May 9, 2011) ("[W]hile [plaintiff] may have been deprived of his state procedural right to be arraigned locally, that deprivation alone does not entitle him to relief under the Fourth Amendment."); Hopper v. Rinaldi, No. 07-CV-5323, 2008 WL 558049, at *2 (D.N.J. Feb. 29, 2008) (dismissing the plaintiff's false arrest claim where it was clear that officers acted with probable cause, despite the plaintiff's allegations that the officers were acting outside of their jurisdiction).

Accordingly, Defendants' motion to dismiss Plaintiffs' false arrest and malicious prosecution claims against O'Keefe and CSX pursuant to Section 1983 due to insufficient allegations

11

regarding probable cause is GRANTED. Moreover, as a malicious prosecution claim under New York law is identical to one under federal law, Defendants' motion to dismiss that claim is likewise GRANTED.

    C. <u>Substantive Due Process</u>

Defendants further move for judgment on the pleadings insofar as Plaintiffs' allegation that they were "depriv[ed] of liberty and privacy" asserts a claim for violation of their substantive due process rights. (Compl. ¶ 37.) Defendants maintain that the proper cause of action for such a claim is one under the Fourth Amendment and that, therefore, any cause of action for substantive due process is duplicative. The Court agrees.

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. CONST. Amend. XIV, § 1. Thus, to establish a violation of substantive due process, Plaintiffs must first identify a valid liberty or property interest. <u>See</u> <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 503 (2d Cir. 2001); <u>Toussie v. Cnty. of Suffolk</u>, 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011).

Here, although Plaintiffs have identified a protected property interest, their claim for substantive due process cannot stand. In <u>Albright v. Oliver</u>, the Supreme Court held

12

that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994) (internal quotation marks and citations omitted). Thus, given that Plaintiffs have alleged a Fourth Amendment violation, Defendants' motion in this regard is GRANTED and Plaintiffs' substantive due process claim is DISMISSED WITH PREJUDICE.

III. Plaintiffs' State Law Claims

Plaintiffs also allege various state law claims, including malicious prosecution, which this Court has already dismissed; false imprisonment; negligence in causing the seizure and detention of Plaintiffs; negligent hiring, screening, supervision, and training of officers by CSX; conspiracy; and intentional infliction of emotional distress. They concede, however, that their claims are dependent upon the Court rejecting Defendants' arguments that the seizure in this matter was constitutionally permissible. (See Pls.' Opp. Br., Docket Entry 17, at 1 n.1). As the Court has accepted Defendants' argument that Plaintiffs have not sufficiently alleged any violation of their federal constitutional rights, Plaintiffs'

13

state law claims fail, and Defendants' motion on these claims is GRANTED.[3]

IV. Amendment

Although Plaintiffs have not separately moved for amendment of their Complaint, the parties have addressed that issue to a certain extent, and the Court will consider whether amendment is appropriate for any of those claims that have not been dismissed with prejudice.

A. Legal Standard

Courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To

---

[3] To the extent that Plaintiffs' false imprisonment claim under New York law is at all independent from, or more expansive than, Plaintiffs' federal claim, it is time-barred. See Curry v. Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (A false imprisonment claim under New York law consists of four elements: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious for the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." (quoting Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (alteration in original)). "The statute of limitations for state law false arrest or false imprisonment, an intentional tort, is one year." Mitchell v. Home, 377 F. Supp. 2d 361, 377 (S.D.N.Y. 2005) (citing N.Y. C.P.L.R. 215(3)). Here, all of the alleged events occurred, and were complete, on April 14, 2012. Plaintiffs, however, did not file their action until April 17, 2013. Accordingly, their claim for state law false imprisonment is time-barred. See Sisak, 1992 WL 42245, at *5.

14

determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

B. False Arrest and Malicious Prosecution

Defendants' opening brief specifically argues that any amendment of the Complaint regarding Plaintiffs' false arrest and malicious prosecution claims would be futile because Plaintiffs cannot plausibly allege a lack of probable cause. (Defs.' Br. at 12.) The Court agrees.

Plaintiffs' sole argument regarding lack of probable cause relates to O'Keefe's lack of geographical authority. In fact, rather than responding to Defendants' arguments on a claim-by-claim basis, Plaintiffs oppose Defendants' two "primary" arguments--whether Defendants are state actors and whether qualified immunity applies--and spend a majority of their brief discussing the element of probable cause. Plaintiffs make abundantly clear that they allege a lack of probable cause because O'Keefe was not authorized to make the stop--not that O'Keefe lacked probable cause to believe that Ms. George was committing a traffic violation or that O'Keefe acted unreasonably in any other manner. They raise no arguments in opposition to Defendants' assertions that O'Keefe observed Ms.

15

George committing traffic violations or that, other than stopping Ms. George and issuing her the summonses at issue, that O'Keefe otherwise did not act unreasonably, thus conceding these points. See Zinter Handling, Inc. v. General Elec. Co., No. 04-CV-0500, 2005 WL 1843282, at *4 n.6 (N.D.N.Y. Aug. 2, 2005) ("[B]ased on [plaintiff's] failure to offer any argument in opposition, the court deems [defendant's] point conceded . . . ."); see also Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 452 n. 32 (S.D.N.Y. 2010) (claim deemed abandoned because plaintiff did not respond to, or even mention, claim in opposition to defendants' motion to dismiss).

Accordingly, Plaintiffs' false arrest and malicious prosecution claims are DISMISSED WITH PREJUDICE.

C. Plaintiffs' Remaining State Law Claims

Finally, the Court declines supplemental jurisdiction as to Plaintiffs' remaining state law claims. Under Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the Complaint asserts federal question jurisdiction but not diversity jurisdiction, and the Complaint's federal claims are dismissed in the litigation's 'early stages.'" See also 28 U.S.C. § 1367(c)(3); Tops Marks, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998)

16

("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise supplemental pendent jurisdiction over remaining state law claims and dismissing them without prejudice." (emphasis in original)).

Accordingly, Plaintiffs' state law malicious prosecution claims, which are either time-barred or otherwise fail for lack of probable cause, are DISMISSED WITH PREJUDICE. Plaintiffs' remaining state law claims are DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART. It is DENIED insofar as Defendants assert that Plaintiffs have not sufficiently alleged state action under color of state law, but otherwise GRANTED. Plaintiffs' false arrest and malicious prosecution claims are DISMISSED WITH PREJUDICE and Plaintiffs' remaining state law claims are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   January __28__, 2014
         Central Islip, NY

17